BOGARD *v.* SWEET.

APPEAL. FROM THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.

No. 156.　Submitted March 6, 1908.—Decided April 27, 1908.

A .decree of Supreme Court of Oklahoma cancelling a deed given to defendant below in furtherance of a scheme of development of property which had been abandoned, affirmed on the facts.

17 Oklahoma, 40, affirmed.

THE facts are stated in the opinion.

*Mr. John W. Shartel, Mr. James R. Keaton* and *Mr. Frank Wells* for appellants.

*Mr. Charles M. Thacker* for appellees.

MR. JUSTICE HARLAN delivered the opinion of the court.

There can be no doubt upon this record, confused though it be, as to the real nature of the present case.

The substantial facts are these: In December, 1890, one Sweet, claiming to be owner of certain town lots covered by a patent to him from the State of Texas, of date December 10, 1885, conveyed the same by deed (his wife uniting with him) to J. G. Bogard and other named persons. The lots were in the town of Mangum, which was in what is now Greer County, Oklahoma. The deed, which was recorded, was with warranty and absolute upon its face. On the same day, at the same time, a written agreement was entered into between, substantially, the same parties. That agreement referred in terms to the deed and bound the grantees therein to sell the lots, collect the proceeds of sale, and out of the gross receipts in cash received and collected on such sales, as soon as collected, pay over two-thirds to Sweet and his wife. The agree-

ment recites that Sweet had transferred to the other parties a large number of promissory notes, which Sweet had taken for purchase money due on certain town lots previously sold by him. Bogard and his associates by the agreement bound themselves to use due diligence to collect the notes, handing over to Sweet two-thirds of the amount collected on them.

The parties with whom Sweet made this arrangement were members of the Mangum Star Printing and Publishing Association, a partnership located at Mangum. The arrangement, evidenced by the deed and the agreement, had for its object the building up of that town, the parties, as stated, with whom Sweet contracted receiving, as compensation for their services, one-third on the sales of lots and a like proportion of the proceeds of any notes collected by them. There was no other consideration for the arrangement. The absolute title to the lots was put in Bogard and his associates for purposes of convenience, namely, that they might the more easily effect sales of the property. The situation was accurately described by the Supreme Court of the Territory of Oklahoma when it said: "The record discloses that at a date when Greer County was claimed to be a part of and under the jurisdiction of the State of Texas, H. C. Sweet purchased the land in controversy from that State, and while claiming the same under such title, platted it into town lots which became, and were at the time of the action, a part of the townsite of the city of Mangum. H. C. Sweet, desiring to aid in the upbuilding of a newspaper and the town generally, entered into a contract with the defendants in error, and others, to allow the plaintiffs in error to sell his townsite property, and to collect certain notes which he then had, for property by him theretofore sold, the understanding and agreement being that, in order to facilitate the business, the plaintiffs in error were to form a corporation for the purpose of running the newspaper and selling the real estate, it being agreed that the corporation should sell the property and collect the notes and pay to Sweet two-thirds of the amount of the sales and retain one-third thereof as their

commission. As a matter of convenience, in the carrying out of the contract, a deed was made by Sweet and wife to all of the property. Afterwards an attempt was made to form the corporation. There being no law in Texas under which such a corporation could be formed, that portion of the scheme failed, and, as shown by the record, the project was dropped by almost all, if not entirely all, of the parties connected therewith, and the deed, although recorded, was returned to Sweet, together with the notes."

As already indicated, at the time the above arrangement was made it was supposed by some that Greer County was part of the State of Texas. For many years, indeed, from the time of its admission into the Union, Texas asserted that Greer County was within its recognized limits. But subsequently, in a suit brought in this court by the United States against the State, it was adjudged that Greer County constituted no part of the State of Texas, but was under the exclusive jurisdiction of the United States. *United States* v. *Texas,* 162 U. S. (1895), 1, 90.

At a later date, January 18, 1897 (29 Stat. 490), Congress passed an act whereby grants of lands in Greer County could be obtained under the homestead law of the United States as modified by that act. Under that legislation Sweet, on October 13, 1898, obtained a patent from the United States and holds title under it.

The original scheme for the upbuilding of Mangum as outlined in the deed and agreement of 1890 failed and was wholly abandoned by the parties to those instruments, and the present suit was brought by Sweet and wife for the cancellation of the deed made to Bogard, and for a decree removing the cloud created by it upon the title to the property in question. The plaintiffs having died, after the institution of the suit, there was a revivor of the suit in the name of their children and heirs. Notwithstanding some of the parties to the original scheme defended the suit, a decree was rendered in accordance with the prayer of the plaintiffs, and that decree was affirmed

by the Supreme Court of the Territory of Oklahoma. 17 Oklahoma, 40.

Neither argument nor citation of authorities is necessary to establish the correctness of the decree below, and it is

*Affirmed.*